proceeding. Based upon the General Counsel's representation that July 26, 1997 is simply the earliest possible date from which backpay can accrue, we find no error in the ALJ's determination.

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** GTC's petition for review and **GRANT** the NLRB's cross-application for enforcement.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0230P (6th Cir.)
File Name:  02a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

GLENN'S TRUCKING CO.,
                    *Petitioner/*
        *Cross-Respondent,*

        *v.*

NATIONAL LABOR RELATIONS
BOARD,
                    *Respondent/*
        *Cross-Petitioner.*

Nos. 00-2358;
01-1053

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
No. 9-CA-35666.

Argued:  May 1, 2002

Decided and Filed:  May 23, 2002[*]

————————————

[*] This decision was originally issued as an "unpublished decision" filed on May 23, 2002.  On July 2, 2002, the court designated the opinion as one recommended for full-text publication.

Before:  SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[**]

_____

## COUNSEL

**ARGUED:**  George J. Miller, WYATT, TARRANT & COMBS, Lexington, Kentucky, for Petitioner.  Bridget O'Connor, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Respondent.  **ON BRIEF:**  George J. Miller, Richard C. Ward, WYATT, TARRANT & COMBS, Lexington, Kentucky, for Petitioner.  Aileen A. Armstrong, Charles P. Donnelly, Jr., Rachel Gartner Lennie, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  The United Mine Workers of America (UMWA) filed an unfair labor practice charge against Glenn's Trucking Co., Inc. (GTC), a coal-hauling company, based upon the company's delay in hiring 23 union members.  Acting on this charge, the General Counsel of the National Labor Relations Board (NLRB) issued a complaint against GTC for violating the National Labor Relations Act (the Act).  After a hearing, an Administrative Law Judge (ALJ) determined that GTC violated the Act and ordered the company to pay the union members backpay and benefits.  The NLRB affirmed the ALJ's findings of fact and conclusions of law, but adopted a slightly modified version of his recommended order.  For the

_____

[**]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

First, GTC claims that the General Counsel did not prove that the alleged discriminatees engaged in conduct protected by the Act and, even if they did, that GTC had any knowledge of their protected activity.  The ALJ's findings to the contrary were based on his credibility determinations regarding the testimony of a number of GTC officials.  GTC has not provided any compelling reason for this court to find "that there is no rational basis" for these determinations.

Second, GTC claims that it utilized neutral criteria in hiring drivers, "namely a combination of on-the-spot hiring and reviewing the file of application forms."  The ALJ relied in large part on his evaluation of credibility in rejecting GTC's assertion that it hired individuals who were persistent enough to come to the jobsite, and that it reviewed applications to find qualified drivers.  As the ALJ pointed out, a number of GTC officials provided inconsistent testimony on this issue, and the record belies several of their contentions.  We therefore conclude that substantial evidence supports the ALJ's rejection of GTC's affirmative defenses.

## C.  Remedy

After concluding that GTC violated the Act, the ALJ ordered it to compensate the discriminatees "for any loss of earnings and other benefits they may have suffered as a result of [GTC's] unlawful discrimination against them, from July 26, 1997, until the date that [GTC] hired them or made them a valid offer of employment . . . ."  GTC contends that the ALJ should not have utilized this start date for calculating compensation "because it assumes that GTC had an obligation to offer all 23 of the alleged discriminatees a job no later than July 26, 1997 . . . ."

At oral argument, however, the General Counsel clarified this issue by pointing out that July 26, 1997 is nothing more than the earliest date from which backpay could have accrued.  The exact start date for the backpay period for each of the discriminatees is yet to be determined at a compliance

factor' in an identifiable employment decision." *Fluor Daniel, Inc.*, 161 F.3d at 969. A generalized anti-union animus is thus insufficient to prove an unfair labor practice claim. Instead, the General Counsel must prove that the individuals in question are (1) applying for jobs that are available, and (2) qualified for those jobs. *Id*. at 967 ("It cannot be an unfair labor practice merely for an employer to harbor animus against union members applying for jobs that do not exist or have already been filled, or for which they are not qualified.").

Contrary to GTC's contention, the General Counsel did present sufficient evidence to prove this element of a § 8(a)(3) violation. First, the discriminatees submitted applications for job openings as drivers for GTC. The ALJ noted that "[t]he parties stipulated that each of the 23 alleged discriminatees applied for work on either July 11 or 14." Given that GTC hired 28 drivers in August of 1997 alone, and 97 over the following nine months, the discriminatees clearly applied for jobs that were in fact available.

Second, an examination of the applications of those individuals whom GTC hired establishes that the discriminatees' credentials were within the same range as the drivers who were deemed qualified by GTC to fill the job openings. Thirteen of the discriminatees held Class A driver's licenses when they applied for the jobs, and seven others qualified soon thereafter. In fact, in at least some cases, the discriminatees appear to be more qualified than those individuals who were hired. For example, at least 17 of the individuals that GTC hired did not possess a Class A driver's license. We therefore conclude that sufficient evidence supports the ALJ's finding that the discriminatees were qualified to fill the job openings.

### 2. *Affirmative defenses*

GTC raises two cursory arguments in the nature of affirmative defenses, neither of which we find meritorious.

reasons set forth below, we **DENY** GTC's petition for review and **GRANT** the NLRB's cross-application for enforcement.

## I.   BACKGROUND

On July 16, 1997, GTC won a competitive bid to haul coal from the Starfire Mine in Perry and Knott Counties, Kentucky. The contract had previously been awarded to John Chaney Trucking. Chaney had used only tandem trucks, which are dump trucks with a single rear axle. Under Kentucky law, a driver must possess a Class B commercial driver's license to operate a tandem truck on public roads. GTC, however, planned to use tractor/trailer trucks to haul coal from the Starfire Mine. In order to lawfully operate a tractor/trailer, a driver must possess a Class A commercial driver's license.

A representative of the UMWA met with Glenn Baker, the president of GTC, to discuss potential job openings shortly after the contract was awarded. The representative gave Baker a list of 25 truck drivers who had formerly worked for John Chaney Trucking, all of whom were UMWA members. One of the individuals on the list, Manuel Davis, had already been hired by GTC. Another, Robert Durham, was one of the 28 drivers GTC hired in August of 1997. Over the course of the next 9 months, GTC hired 97 additional drivers. Of these, only 5 were individuals who were on the UMWA list, despite Baker's initial assurance that he would have jobs for all of the listed individuals. GTC offered jobs to the remaining individuals on the UMWA list in September of 1998 in order to cut off the possibility of further backpay claims.

## II.   ANALYSIS

### A.   Standard of review

"[F]actual findings of the Board must be upheld if supported by substantial evidence on the record considered as a whole." *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 870 (6th Cir. 1995). "The Board's application of law to facts is also

reviewed under the substantial evidence standard . . . ." *NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 952 (6th Cir. 2000). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Accordingly, we may not displace the Board's reasonable inferences "even though [we] might justifiably have reached a different conclusion had the matter been before [us] *de novo*." *Tony Scott Trucking, Inc. v. NLRB*, 821 F.2d 312, 313 (6th Cir. 1987). In particular, "[t]he standard for review for the Board's determinations of credibility is narrow." *Local Union No. 948 v. NLRB*, 697 F.2d 113, 117 (6th Cir. 1982). Credibility determinations are thus accepted "unless it is clear that there is no rational basis for them." *NLRB v. Valley Plaza, Inc.*, 715 F.2d 237, 242 (6th Cir. 1983).

## B.  Unfair labor practice charge

Pursuant to § 8(a)(3) of the Act, it is an unfair labor practice for an employer, "by discrimination in regard to hire or tenure of employment or any term or condition of employment[,] to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). "[T]here are two elements to a Section 8(a)(3) violation: [1] anti-union animus, and [2] the occurrence of a covered action—for example, a particular discharge, or a particular failure to hire." *NLRB v. Fluor Daniel, Inc.*, 161 F.3d 953, 966 (6th Cir. 1998). The General Counsel bears the burden of proving both of these elements. *Id*. If the NLRB establishes a violation of the Act, the employer may then come forward with evidence that the adverse employment actions would have occurred even if the individuals in question had not been involved with a union. *Id*. The employer bears the burden of proving an affirmative defense. *Id*.

### 1.  *Prima facie case*

GTC contends that the General Counsel did not come forward with sufficient evidence to prove the two elements of a prima facie case. With regard to the first element, GTC asserts that the statistical evidence offered by the General Counsel is insufficient to prove anti-union animus. In particular, GTC points out that it did hire a number of union members, and that the statistics on which the General Counsel relies do not present a clear case of discrimination. GTC emphasizes that it rejected the applications of many other individuals besides the listed UMWA members, and that the rejection rate for the alleged "discriminatees" was comparable to that for the general pool of applicants.

The statistical proof of discrimination is, on the whole, relatively weak. As the ALJ emphasized, however, the data from August of 1997 provides reasonably persuasive evidence of anti-union animus. The ALJ found that Baker's secretary, Joan Hall, "testified that she could find no rejected applications that were filed [that month], other than those of the alleged discriminatees." Although GTC contests the ALJ's factual finding regarding Hall's testimony, it is supported by substantial evidence. Given that GTC hired only one union-affiliated individual in August of 1997 despite filling 28 job openings, Hall's testimony is particularly significant. We therefore conclude that there is sufficient evidence to support the ALJ's conclusion that the General Counsel proved anti-union animus.

With regard to the second element, GTC argues that the General Counsel did not prove that a covered employment action occurred, because he failed to "match applicants with available jobs" as he is required to do pursuant to *Fluor Daniel*. In *Fluor Daniel*, this court held that "establishment of the General Counsel's prima facie case requires the showing of some nexus between anti-union animus and a particular failure to hire—a nexus sufficient to warrant the reasonable inference that discrimination was 'a motivating